UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AISHA RILEY, ON BEHALF OF HERSELF AND OTHERS SIMILARLY SITUATED, | § § § | |
| PLAINTIFF, | § § § | |
| v. | § § | CIVIL ACTION NO. 4:20-CV-2767 |
| HOUSTON NORTHWEST OPERATING COMPANY, L.L.C., A TEXAS LIMITED LIABILITY COMPANY D/B/A "HCA HOUSTON HEALTHCARE NORTHWEST" AND "HOUSTON NORTHWEST MEDICAL CENTER," AND GULF COAST DIVISION, INC., A TEXAS CORPORATION D/B/A "HCA HOUSTON HEALTHCARE," | § § § § § § § § § § | |
| DEFENDANTS. | § § | |

## NOTICE OF REMOVAL

Pursuant to 29 U.S.C. § 1132 and 28 U.S.C. §§ 1332, 1441, 1446, and 1453, Defendants Houston Northwest Operating Company, LLC d/b/a Houston Northwest Medical Center ("Houston Northwest") and Gulf Coast Division, Inc. d/b/a HCA Houston Healthcare ("Gulf Coast Division," and, with Houston Northwest, "Defendants") hereby remove to this Court the action styled "*Aisha Riley, on behalf of herself and all others similarly situated v. Houston Northwest Operating Company, LLC, d/b/a "HCA Houston Healthcare Northwest" and "Houston Northwest Medical Center," and Gulf Coast Division Inc., a Texas Corporation d/b/a "HCA Houston Healthcare"*," Cause No. 2020-39473, in the 157th District Court of Harris County, Texas. Defendants remove this case under both the Employee Retirement Income Security Act ("ERISA") and the Class Action Fairness Act of 2005 ("CAFA").

## I.    The State Court Action

1.      On July 2, 2020, Plaintiff Aisha Riley ("Plaintiff") filed Plaintiff's Original Class Action Petition ("Petition") in Cause No. 2020-39473, in the 157th District Court of Harris County, Texas (the "State Court Action").  Defendants were served with process on July 10, 2020.  Pursuant to Local Civil Rule 5.2, Defendants advise the Court that Plaintiff filed a similar lawsuit against Defendants in this Court on July 10, 2019, and voluntarily dismissed it without prejudice on July 2, 2020.  *See Riley v. Houston Northwest Operating Company, LLC, et al.*, Civil Action No. H-19-2496, in the United States District Court for the Southern District of Texas, Houston Division.

2.      Pursuant to 28 U.S.C. § 1446(a) and Local Civil Rule 81, Defendants attach the following exhibits to this Notice of Removal:

Exhibit A.    Index of documents being filed with this Notice of Removal and copies of all executed process in the case, pleadings asserting causes of action and all answers to such pleadings that were filed in the State Court Action, and all orders signed by the state judge in the State Court Action

Exhibit A-1:    Plaintiff's Original Class Action Petition

Exhibit A-2:    Citation Issued for Gulf Coast Division, Inc.

Exhibit A-3:    Citation Issued for Houston Northwest Operating Company, LLC

Exhibit A-4:    Defendants' Original Answer and Affirmative Defenses

Exhibit A-5:    Order Granting Motion by Nonresident Attorney Barry L. Kramer for Admission Pro Hac Vice

Exhibit B.    Copy of the docket sheet from the State Court Action

Exhibit C.    A list of all counsel of record, including addresses, telephone numbers, and parties represented

Exhibit D.    Rule 7.1 Disclosure Statement

Exhibit E.    Civil Cover Sheet

Exhibit F.    Declaration of Lisa Berryhill ("Berryhill Decl.")[1]

    Exhibit F-1:    Conditions of Admission and Consent for Outpatient Care

    Exhibit F-2:    Plaintiff's Health Plan Member ID Card

    Exhibit F-3:    Claim Filed with Blue Cross and Blue Shield of Texas

    Exhibit F-4:    Billing Statement

Exhibit G.    Declaration of William M. Katz, Jr. ("Katz Decl.")

    Exhibit G-1:    Certified Copy of Certificate of Formation of Houston Northwest

    Exhibit G-2:    Certified Copy of 2019 Public Information Report of Houston Northwest

    Exhibit G-3:    Certified Copy of Articles of Incorporation of Gulf Coast Division

    Exhibit G-4:    Certified Copy of Articles of Amendment to Articles of Incorporation of Gulf Coast Division

    Exhibit G-5:    Certified Copy of 2019 Public Information Report of Gulf Coast Division

    Exhibit G-6:    Public Records Report of F.P., dated June 29, 2020

    Exhibit G-7:    Public Records Report of F.P., dated July 31, 2020

    Exhibit G-8:    Public Records Report of C.J., dated June 26, 2020

    Exhibit G-9:    Public Records Report of C.J., dated July 31, 2020

    Exhibit G-10:    Public Records Report of D.J., dated June 26, 2020

    Exhibit G-11:    Public Records Report of D.J., dated July 31, 2020

    Exhibit G-12:    Public Records Report of L.S., dated June 26, 2020

    Exhibit G-13:    Public Records Report of L.S., dated July 31, 2020

---

[1] Exhibit F and its exhibits are being filed separately with a motion for leave to file under seal because they contain information regarding Plaintiff Aisha Riley's treatment, billing activity, sensitive healthcare information, and other confidential information.

## II.  Original Subject Matter Jurisdiction

### A.  Complete Preemption under ERISA Section 502(a)

3.     This Court has subject matter jurisdiction over this case under Section 502(a) of ERISA (29 U.S.C. § 1132(a)).  ERISA completely preempts any state-law cause of action that "duplicates, supplements, or supplants" the remedies found in Section 502(a), ERISA's civil enforcement provision.  *See Aetna Health, Inc.* v. *Davila,* 542 U.S. 200, 208 (2004) ("[T]he detailed provisions of Section 502(a) set forth a comprehensive civil enforcement scheme that represents the careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. . . . Therefore, any state-law cause of action *that duplicates, supplements, or supplants the ERISA civil enforcement remedy* conflicts with clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted."  (first alteration in original) (emphasis added)); *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987) ("Congress has clearly manifested an intent to make causes of action within the scope of § 502(a) removable to federal court.").  Any lawsuit where the plaintiff alleges at least one claim which "duplicates, supplements, or supplants" a claim available under Section 502(a) of ERISA is therefore removable to federal court.  *Davila*, 542 U.S. at 208 ("[C]auses of action within the scope of the civil enforcement provisions of Section 502(a) [are] removable to federal court." (second alteration in original)); *Taylor*, 481 U.S. at 66 (same); *see also Corcoran v. United Health Care, Inc.*, 965 F.2d 1321, 1324–25 n.4 (5th Cir. 1992) (noting that "because ERISA pre-emption is so comprehensive, pre-emption defense provides sufficient

basis for removal to federal court notwithstanding 'well-pleaded complaint' rule"); *Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 245 (5th Cir. 1990).[2]

4. Complete preemption under ERISA is deliberately expansive. *See Pilot Life Ins. Co.* v. *Dedeaux,* 481 U.S. 41, 45–46 (1987). To this end, ERISA "includes expansive pre-emption provisions which are intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'" *Davila*, 542 U.S. at 208 (internal citation omitted) (quoting *Alessi* v. *Raybestos-Manhattan Inc.*, 451 U.S. 504, 523 (1981)). Further, any state-law cause of action that duplicates, supplements, or supplants ERISA's civil enforcement remedy conflicts with Congress's clear intent to make the ERISA remedy exclusive; therefore, such state-law causes of action are preempted. *Id.* at 207–08 ("[W]hen the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law.' ERISA is one of these statutes." (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003))). Thus, ERISA's civil enforcement mechanism is one of those provisions with such extraordinary preemptive power that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule; hence, causes of action within the scope of the civil enforcement provisions are removable to federal court. *Id.* at 208.

5. This preemptive power under ERISA Section 502(a) extends to any state-law cause of action that supplement, supplant, or duplicate *any* of the remedies found in the ERISA civil-enforcement provision, Section 502(a); it is not limited to the remedies found in any particular subsection, such as Section 502(a)(1)(B). *See Ford v. Freeman*, 388 F. Supp. 3d 692, 699–700

---

[2] Complete preemption under Section 502(a) of ERISA is distinct from conflict preemption under Section 514 of ERISA (29 U.S.C. § 1144). Defendants remove this case to federal court solely on the basis of complete preemption under Section 502(a).

(N.D. Tex. 2019) ("Because the Supreme Court's complete-preemption framework articulated in *Davila* was based on ERISA's comprehensive civil-enforcement scheme sect forth in ERISA Section 502(a), subsequent courts . . . have considered whether an individual could bring an ERISA claim under the various civil-enforcement provisions found in ERISA Section 502(a), not just Section 502(a)(1)(B).").

6.    A claim falls within ERISA's civil enforcement action when two criteria are met: (1) the plaintiff could have asserted her claim under ERISA Section 502(a); and (2) the plaintiff's claim implicates the terms of her employer-sponsored health benefit plan, not an independent legal basis.  *See, e.g.*, *Innova Hosp. San Antonio, L.P. v. Humana Ins. Co.*, 25 F. Supp. 3d 951, 958 (W.D. Tex. 2014); *see also Lone Star OB/GYN Assocs. v. Aetna Health Inc.*, 579 F.3d 525, 529–30 (5th Cir. 2009).  With respect to causes of action relating to a health plan's determination of payment to a hospital, courts distinguish between a cause of action that involves the hospital's ***right*** to payment, which is completely preempted, and a cause of action that involves only the ***rate*** that the hospital paid, which is not preempted if it can be determined by reference to a document other than the patient's health plan.  *Lone Star OB/GYN*, 579 F.3d at 531–32.  ERISA completely preempts a claim that involves a health plan's determination of a patient's coverage and benefits, including patient responsibility, under an employer-sponsored health plan.  *See In re Mgd. Care Litig.*, Case No. 0621156-CIV, 2009 WL 855967, *6–7 (S.D. Fla. Mar. 30, 2009).

### 1.  Plaintiff's Employer-Sponsored Healthcare Coverage

7.    In this case, Plaintiff alleges two state-law claims—a request for a declaratory judgment and relief under the Texas Deceptive Trade Practices Act ("DTPA")—relating to Houston Northwest's charging of an allegedly undisclosed Evaluation and Management ("E&M")

charge.[3]    However, Plaintiff's Petition completely omits mention of her employer-sponsored healthcare coverage, and how that coverage, and not Houston Northwest, actually determined Plaintiff's responsibility for paying the E&M charge.    The presence of Plaintiff's employer-sponsored healthcare coverage results in all of her claims being completely preempted by ERISA's civil-enforcement scheme in Section 502(a) and therefore removable to federal court.

8.    Plaintiff presented to Houston Northwest's Emergency Department ("ED") on December 24, 2018.  During her ED visit, she was provided with Houston Northwest's Conditions of Admission and Consent for Outpatient Care form, which she signed.  In the Conditions of Admission, Plaintiff assigned her healthcare plan benefits to Houston Northwest.  *See* Ex. F, Berryhill Decl. ¶ 9 & Ex. F-1 ¶ 5 (Financial Agreement).

9.    At the time she presented to the ED, Plaintiff presented Houston Northwest with her health plan member ID card, which showed she was a participant in an employer-sponsored healthcare plan.  *See id.* ¶ 10 & Ex. F-2.  Specifically, Plaintiff was a participant in a PPO health plan sponsored by her employer, Kindred Healthcare ("Kindred"), and administered by Anthem Blue Cross and Blue Shield ("Anthem BCBS").  *See id.* ¶¶ 10-11 & Ex. F-2  Plaintiff's healthcare plan is therefore an employee welfare benefit plan that is governed by ERISA.  *See* 29 U.S.C. § 1002(1) (defining "employee welfare benefit plan").

10.    Houston Northwest is a participating provider with Blue Cross and Blue Shield of Texas ("BCBSTX")—*i.e.,* an in-network provider—through a participating provider agreement with BCBSTX (the "BCBSTX Agreement").  The BCBSTX Agreement provides for negotiated, discounted reimbursement rates for covered hospital services provided to BCBSTX PPO plan members.  According to the BCBSTX Agreement, Houston Northwest is not only considered a

---

[3] In her Petition, Plaintiff refers to the E&M charge as an Evaluation and Management Services Fee or "EMS Fee."

participating provider in BCBSTX's provider network; it is also considered a participating provider with respect to services that Houston Northwest provides to members of a PPO health plan insured or administered by a BCBS plan of another state, including Anthem BCBS. *See* Ex. F, Berryhill Decl. ¶ 11.

11.     Accordingly, Houston Northwest is considered a participating provider for the services that it provided to Plaintiff on December 24, 2018 (as Plaintiff acknowledged in the Conditions of Admission that she signed). Plaintiff's responsibility, if any, for Houston Northwest's charges for her ED services (including the E&M charge) was therefore subject to the negotiated rates in the BCBSTX Agreement, the coverage stated in her PPO health benefit plan, and the copayment, coinsurance, and deductible as determined by her health benefit plan. *See id.* ¶ 12 & Ex. F-1.

12.     Houston Northwest therefore submitted a claim for payment to BCBSTX for the services it provided to Plaintiff. *See id.* ¶ 13 & Ex. F-3. BCBSTX received Houston Northwest's claim for payment and determined the amount payable to Houston Northwest for each of the charges, including the E&M charge that Plaintiff disputes in this lawsuit, according to the BCBSTX Agreement. Anthem BCBS, in its role as the third-party administrator of the Kindred health plan, determined coverage and Plaintiff's coinsurance, copayment, and deductible according to the terms of her health benefit plan. This included determining which of Houston Northwest's charges for services, including the charge for the E&M services, were covered charges (*i.e.*, eligible for payment) under her health benefit plan, and Plaintiff's copayment, coinsurance, and deductible under the plan. *See id.* ¶ 14.

13.     In response to Houston Northwest's claim for payment, BCBSTX provided an explanation of benefits ("EOB") to Houston Northwest stating that all of Houston Northwest's

charges for services provided to Plaintiff, including the E&M charge, were covered under her Kindred health benefit plan.  The EOB also shows that BCBSTX applied the rates contained in the BCBSTX Agreement to Houston Northwest's charges to determine the discounted allowed amount for the charges.  The total covered, allowed amount was determined to be $4,085.81 for Houston Northwest's charges, including an allowed amount of $963.47 for the E&M charge.  The EOB stated that the entire allowed amount was assigned to Plaintiff's "patient responsibility" as part of her deductible.  *See id.* ¶ 15.

14.    Houston Northwest therefore sent Plaintiff a billing statement for her patient responsibility, as the BCBSTX Agreement requires.  *See id.* ¶ 16 & Ex. F-4.  Importantly, this billing statement sought to collect only the amount that was covered under Plaintiff's Kindred health benefit plan, as stated in the EOB.  *See id.* ¶ 16.  Thus, rather than having a $2,208.93 E&M charge added to her bill, as Plaintiff's Petition alleges, Plaintiff was billed and responsible for paying only the portion of the E&M charge that the EOB stated was covered according to the Kindred health plan: $963.47.  Indeed, because Houston Northwest is a participating provider with respect to Plaintiff's treatment, both the BCBSTX Agreement and Texas Insurance Code prohibit Houston Northwest from attempting to collect more from Plaintiff than her patient responsibility, as determined by her health plan.  *See id.* ¶ 17; Tex. Ins. Code § 1301.060 ("A preferred provider contract must include a provision by which the physician or health care provider agrees that if the preferred provider is compensated on a discounted fee basis, the insured may be billed only on the discounted fee and not the full charge.").

15.    Based on the foregoing, Plaintiff did not suffer ***any*** injury attributable to Houston Northwest's charging of an E&M charge, undisclosed or otherwise, in the way she alleges in her Petition.  Rather, Plaintiff's alleged injury arose from and is attributable only to the fact that the

9

health plan to which she subscribed both provided coverage for Houston Northwest's E&M charge (at the discounted rate in the BCBSTX Agreement) and determined that Plaintiff was responsible for paying the discounted E&M charge as part of her deductible. Indeed, had her health plan determined that Houston Northwest's E&M charge was not a covered charge under the plan, then Plaintiff would have no injury because she would have no responsibility for paying any portion of the E&M charge and Houston Northwest could not have billed Plaintiff anything for it.

### 2. Plaintiff's claims are completely preempted by ERISA

16. Under the facts of this case, Plaintiff's claims challenge both Houston Northwest's *right* to payment and the determination of coverage made under Plaintiff's ERISA-governed healthcare plan. Plaintiff's claims are therefore completely preempted. *See Lone Star OB/GYN*, 579 F.3d at 531–32; *In re Mgd. Care Litig*., 2009 WL 855967, at *6 (holding that a health plan's "calculation of the insureds' remaining financial obligation is in essence a determination of insureds' rights under a given plan," and that any claim challenging that determination is completely preempted). As explained below, both of the ERISA complete-preemption criteria— (1) the plaintiff could have asserted her claim under ERISA Section 502(a); and (2) the plaintiff's claim implicates the terms of her employer-sponsored health benefit plan, not an independent legal basis—are met here, making removal proper. *See, e.g.*, *Lone Star OB/GYN*, 579 F.3d at 529–30; *Innova Hosp. San Antonio*, 25 F. Supp. 3d at 963.

17. First, Plaintiff could have asserted her claim under ERISA; indeed, Plaintiff could have brought suit against her health plan challenging its coverage of the E&M charge and assignment of the negotiated rate to her patient responsibility and seeking the same declaratory and equitable relief under Section 502(a)(1)(B) or Section 502(a)(3) of ERISA. Plaintiff's claims and requested relief therefore "duplicate, supplement, or supplant" a cause of action to recover

benefits due under an ERISA plan and clarify the right to future benefits under an ERISA plan, which is actionable under Section 502(a)(1)(B) of ERISA. *See In re Mgd. Care Litig.*, 2009 WL 855967, at *6 (explaining that "ERISA provides an avenue for the beneficiary to resolve this problem" relating to its health plan's determination of patient responsibility). Plaintiff's requests for equitable relief with respect to her DTPA claim also "duplicate, supplement, or supplant" a cause of action under Section 502(a)(3) of ERISA, which permits a plan beneficiary to pursue equitable relief to address violations of her health plan. *See* 29 U.S.C. § 1132(a)(3).

18.    Second, Plaintiff's claims have no independent legal basis. As explained above, Plaintiff's claims are based entirely on her ERISA-governed health plan's determination that Houston Northwest's E&M charge is both covered and her patient responsibility. Indeed, had it been determined that Houston Northwest's E&M charge was not covered by Plaintiff's health plan and was not Plaintiff's patient responsibility, Houston Northwest could not have billed her for the negotiated rate for that E&M charge. *See* Ex. F, Berryhill Decl. ¶¶ 16-17. Plaintiff cites to no legal basis for her claims against Houston Northwest that is independent of her ERISA-governed health plan's benefit determination (including her patient responsibility); thus, the second prong of the complete-preemption test is met. *Lone Star OB/GYN*, 579 F.3d at 531 (holding that "any determination of benefits under the terms of a plan . . . does fall within ERISA" and is not based on an independent legal duty).

19.    Plaintiff's claims are therefore completely preempted by ERISA. *See Williams v. Methodist Healthcare—Memphis Hosps.*, No. 08-02387-JPM-tmp, 2009 WL 10664396, at *4 (W.D. Tenn. Feb. 6, 2009) (holding that ERISA completely preempted plaintiff's state-law claims (including a consumer protection claim) relating to an in-network hospital's alleged overcharges because the plaintiff's claims required the court to determine the right to coverage under the

plaintiff's health plan); *In re Mgd. Care Litig.*, 2009 WL 855967, at *6 (holding that a health plan's "calculation of the insureds' remaining financial obligation is in essence a determination of insureds' rights under a given plan," and that any claim challenging that determination is completely preempted).

20.     Based on the foregoing, this Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 as the ERISA civil enforcement provision contained within 29 U.S.C. § 1132(a) completely preempts one or more claims in Plaintiffs' Petition.

## B.  Original Jurisdiction Under CAFA

21.     This Court also has subject matter jurisdiction over this case under 28 U.S.C. §§ 1332(d) and 1453.  Plaintiff asserts a class action consisting of more than 100 members in which (1) at least one member of the class is a citizen of a different state than Defendants, and (2) the amount in controversy exceeds $5,000,000, exclusive of interest and costs.    28 U.S.C. § 1332(d)(2).   Thus, the State Court Action may be removed to this Court under 28 U.S.C. § 1441(a).

### 1.     Number of Putative Class Members

22.     Plaintiff defines the putative class as "[a]ll individuals who, on or after July 10, 2015, received or will receive treatment at an HCA Houston Healthcare hospital, and who were or will in the future be charged an Evaluation and Management Services Fee designated with a CPT Code of 99281, 99282, 99283, 99284 or 99285 for such hospital visit."  Ex. A-1, Petition ¶ 6.1. Plaintiff alleges that "the Class consists of at least tens of thousands of persons." *Id.* ¶ 6.3.

### 2.     Minimal Diversity of Citizenship

23.     CAFA requires only minimal diversity—in other words, at least one plaintiff must be from a different state than at least one defendant.  *See Preston v. Tenet Healthsystem Mem'l*

*Med. Ctr., Inc.*, 485 F.3d 793, 797 (5th Cir. 2007).  Minimal diversity exists here if at least one member of the putative class is a citizen of a different state than any Defendant.  *See Berniard v. Down Chem. Co.*, 481 F. App'x 859, 860 (5th Cir. 2010) (per curiam) ("CAFA authorizes federal jurisdiction over class actions that allege (1) the class of plaintiffs would exceed 100 persons, (2) ***at least one member of the class is diverse in citizenship from at least one of the defendants***, and (3) the aggregate quantum of damages suffered by members of the plaintiff class exceeds $5 million (exclusive of interest or costs)." (emphasis added) (citing 28 U.S.C. §§ 1332(d)(2) and (5)(B))).

### a.    Citizenship of Plaintiff's Putative Class

24.    The citizenship of a natural person is determined by his or her domicile, which is established "by physical presence in a location coupled with an intent to remain there indefinitely." *In re Ran*, 607 F.3d 1017, 1022 (5th Cir. 2010); *Coury v. Prot*, 85 F.3d 244, 249 (5th Cir. 1996). "A person's domicile is the place of his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom." *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir. 1974) (citation omitted).  In determining domicile, the Court should consider the following factors: "the places where the litigant exercises civil and political rights, pays taxes, owns real and personal property, has drivers and other licenses, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for his family."  *Coury*, 85 F.3d at 251.

25.    At least one member of the putative class defined by Plaintiff was a citizen of a state other than Texas when the State Court Action was filed and is so at the time of removal.  *See* Ex. G, Katz Decl. ¶¶ 9-10.  Defendants have attached evidence demonstrating that at least four members of the putative class are citizens of states other than Texas at the time of removal and as

of July 2, 2020, the date on which Plaintiff filed the State Court Action.  *See id.* ¶¶ 9-14 & Exs. G-6, G-7, G-8, G-9, G-10, G-11, G-12, G-13.

### b.   Citizenship of Defendants

26.     Gulf Coast Division is a corporation.  *See* Ex. G, Katz Decl. ¶ 5 & Ex. G-3.  "For the purposes of [section 1332] and section 1441 of this title—a corporation shall be deemed a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business[.]"  28 U.S.C. § 1332(c)(1).  Gulf Coast Division is incorporated in Texas, with its principal place of business in Tennessee.  *See id.* ¶ 5 & Exs. G-3, G-4, G-5.  Therefore, Gulf Coast Division is a citizen of Texas and Tennessee at the time of removal and was so when the State Court Action was filed.  *See* 28 U.S.C. § 1332(c)(1); Ex. G, Katz Decl. ¶ 5 & Ex. G-3.

27.     Houston Northwest is a limited liability company.  *See* Ex. G, Katz Decl. ¶ 4.  "For purposes of [section 1332(d)] and section 1453, an unincorporated association [*e.g.,* a limited liability company] shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized."  28 U.S.C. § 1332(d)(10).  Houston Northwest is organized under the laws of the State of Texas, and its principal place of business is in Texas.  *See* Ex. G, Katz Decl. ¶ 4 & Exs. G-1, G-2.  Therefore, Houston Northwest is a citizen of Texas at the time of removal and was so when the State Court Action was filed.  *See* 28 U.S.C. § 1332(d)(10) Ex. G, Katz Decl. ¶ 4 & Exs. G-1, G-2.

28.     Accordingly, as provided by 28 U.S.C. § 1332(d), minimal diversity exists between Defendants and at least one member of the putative class at the time of removal and when the State Court Action was filed.  Moreover, the forum defendant rule does not apply when removing under CAFA, so Defendants' Texas citizenship does not defeat CAFA jurisdiction.  *See* 28 U.S.C.

§ 1453(b) ("A class action may be removed . . . without regard to whether any defendant is a citizen of the State in which the action is brought.").

### 3.    Amount in Controversy

29.    The amount in controversy in this purported class action exceeds $5,000,000, exclusive of interest and costs.  *See* Ex. G, Katz Decl. ¶ 8.

30.    The Fifth Circuit has "required [t]he removing defendant [to] prove by a preponderance of the evidence that the amount in controversy equals or exceeds the jurisdictional amount."  *Perritt v. Westlake Vinyls Co.*, 562 F. App'x 228, 231 (5th Cir. 2014) (alterations in original) (citation omitted).  In sustaining its burden of proof, Defendants may either (1) "[a]dduce summary judgment evidence of the amount in controversy, or (2) demonstrate that, from the class plaintiffs' pleadings alone, it is 'facially apparent' that CAFA's amount in controversy is met."  *Id.* (citation omitted).  "The amount in controversy may be established either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)."  *Magnum Minerals, L.L.C. v. Homeland Ins. Co. of N.Y.*, No. 2:13-CV-103-J, 2013 WL 4766707, at *3 (N.D. Tex. Sept. 5, 2013) (quoting *Rasberry v. Capitol Cnty. Mut. Fire Ins. Co.,* 609 F. Supp. 2d 594, 600–01 (E.D. Tex. 2009)); *see Stephenson v. Standard Ins. Co.*, No. SA:12-cv-01081-DAE, 2013 WL 3146977, at *5 (W.D. Tex. June 18, 2013).

31.    Although Defendants dispute Plaintiff's allegations and the propriety of certifying any putative class, if the Court were to certify the putative class proposed by Plaintiff, the amount in controversy will exceed $5,000,000, exclusive of interest and costs.  *See* Ex. G, Katz Decl. ¶ 8.  Moreover, it is facially apparent from Plaintiff's Petition that the amount in controversy is satisfied here.  Plaintiff alleges that the putative class "consists of at least **tens of thousands** of persons,"

which means that the putative class consists of at least 20,000 individuals.  *See* Ex. A-1, Petition ¶ 6.3 (emphasis added).  Plaintiff further alleges that Houston Northwest improperly charged each class member an emergency department facility fee that ranged between $475 and $3,362.  *Id.* ¶ 5.6.  Assuming that Defendants billed each of the 20,000 putative class members $475, the low end of the range, the amount in controversy would be 20,000 x $475, or $9,500,000, which exceeds CAFA's $5,000,000 threshold.

32.     In sum, because Defendants have established that: (1) this action involves over 100 putative class members; (2) there is minimal diversity between Defendants and at least one putative class member; and (3) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, this Court has jurisdiction over this case under 28 U.S.C. §§ 1332, 1441, 1446, and 1453.

### III.     Timeliness of Removal

33.     As required by 28 U.S.C. § 1446(b), this Notice of Removal is timely because it is filed within thirty (30) days of Defendants' receipt of the Petition on July 10, 2020.

### IV.     Other Procedural Requirements

34.     Defendants file this Notice of Removal in the United States District Court for the Southern District of Texas, Houston Division, which is the district and division within which the State Court Action was pending.  *See* 28 U.S.C. §§ 1441(a), 124(b).

35.     Immediately following the filing of this Notice of Removal, written notice of the filing of this Notice of Removal will be served on Plaintiff's counsel, as required by 28 U.S.C. § 1446(d).

36.    Defendants will promptly file a copy of this Notice of Removal with the Clerk of the 157th District Court of Harris County, Texas, where the State Court Action was pending, as required by 28 U.S.C. § 1446(d).

37.    By removing this action to this Court, Defendants do not waive any defenses, objections, or motions under state or federal law.

**V.    Conclusion**

For all of these reasons, Defendants hereby remove the State Court Action to the United States District Court for the Southern District of Texas, Houston Division, in accordance with 29 U.S.C. § 1132 and 28 U.S.C. §§ 1332, 1441, 1446, and 1453.  Defendants respectfully request that this Court assume jurisdiction over this action and that all further proceedings in the State Court Action be stayed.

Respectfully submitted,

THOMPSON & KNIGHT LLP

By: */s/ J. Patrick Bredehoft*
      J. Patrick Bredehoft
      *Attorney-in-charge*
      State Bar No. 00787132
      S.D. Tex. Bar No. 3566124
      Patrick.Bredehoft@tklaw.com

      William M. Katz, Jr.
      Texas Bar No. 00791003
      S.D. Tex. Bar No. 21581
      William.Katz@tklaw.com

      Catherine C. Rowsey
      Texas Bar No. 24087316
      S.D. Tex. Bar No. 3185923
      Catherine.Rowsey@tklaw.com

      Dina W. McKinney
      State Bar No. 24092809
      S.D. Tex. Bar. No. 3501700
      Dina.McKenney@tklaw.com

      One Arts Plaza
      1722 Routh Street, Suite 1500
      Dallas, TX 75201
      214-969-1700 (Telephone)
      214-969-1751 (Facsimile)

      **ATTORNEYS FOR DEFENDANTS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on August 7, 2020, the foregoing document was served on counsel for Plaintiff listed below by electronically filing this document via ECF, pursuant to Local Civil Rule 5.1.  To ensure that Plaintiff's counsel receive this documents, I am also serving all of the counsel below, including Mr. Kramer, who is not admitted into the Southern District of Texas, via electronic mail.

Daniel E. Blumberg
Daniel@blumbergbagley.com
Peter Bagley
Peter@blumbergbagley.com
Blumberg Bagley PLLC
2304 Interstate 20 West, Suite 190
Arlington, TX  76017

Barry L. Kramer
kramerlaw@aol.com
Law Office of Barry Kramer
9550 S. Eastern Avenue, Suite 253
Las Vegas, NV  89123

*/s/ William M. Katz, Jr.*
William M. Katz, Jr.