United States District Court
Southern District of Texas
**ENTERED**
December 10, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AISHA RILEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-20-2767 |
| | § | |
| HOUSTON NW. OPERATING CO., L.L.C. | § | |
| d/b/a HCA HOUSTON HEALTHCARE NW. | § | |
| d/b/a HOUSTON NW. MED. CTR., GULF | § | |
| COAST DIV., INC. d/b/a HCA HOUSTON | § | |
| HEALTHCARE, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

This case challenges charges billed for emergency room visits. Aisha Riley sued Houston Northwest Operating Company, L.L.C. and Gulf Coast Division, Inc. for adding an "Evaluation and Management Services Fee" to her hospital bill, allegedly without informing her beforehand or obtaining her consent. This is the second time a federal court has encountered Riley's claims. Riley dismissed her first case after the court expressed concern about its subject-matter jurisdiction. Riley refiled in the 157th District Court of Harris County, Texas. The defendants timely removed, alleging jurisdiction under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.*, and the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453. Riley moved to remand, and the parties exchanged briefs.

Based on the pleadings, the motion, the briefs, the record, and the applicable law, the court grants the motion. Remand is entered by separate order. The reasons are explained below.

**I.      Background**

In December 2018, Riley went to the Houston Northwest Medical Center's emergency department. (Docket Entry No. 1-2 ¶ 5.13 (Exhibit A-1)). Riley provided her health insurance card showing that she was covered by an employer-sponsored healthcare plan. (Docket Entry No. 22-1 ¶ 10 (Exhibit A (sealed)). She received and signed the hospital's Conditions of Admission and Consent for Outpatient Care form. (*Id.* at ¶ 9). That form stated that Riley "agree[d] that, except where prohibited by law, the financial responsibility for the services rendered belongs to [her]." (Docket Entry No. 22-1 at 3 (Exhibit A-1 (sealed))).

Houston Northwest submitted a claim for the ER visit to Riley's insurer. (Docket Entry No. 22-1 ¶ 13 (Exhibit A) (sealed)). The $10,381.22 claim included an "ER Visit LVL III" charge of $2,208.93. (Docket Entry No. 22-1 (Exhibit A-3) (sealed)). The insurer processed the claim, determined the amount that it would cover, and determined that Riley was responsible for $4,085.81, of which $963.47 was for the "ER Visit LVL III" charge. (Docket Entry No. 22-1 ¶¶ 13–15 (Exhibit A) (sealed)).

In July 2019, Riley filed a class-action complaint in the federal court in the Southern District of Texas, alleging that the defendants violated Texas common law and the Texas Deceptive Trade Practices Consumer Protection Act by charging patients "a substantial but undisclosed emergency fee."[1] (Docket Entry Nos. 1, 13 ¶¶ 1.1–1.2 (Civil Action No. 19-2496)). She alleged that, before she was treated, the defendants did not inform her of the $2,208.93 charge for visiting the emergency room, and that the defendants have a policy of not informing emergency patients of such charges. Riley asserted federal jurisdiction under CAFA. The defendants moved to dismiss Riley's complaint. (Docket Entry No. 19 (Civil Action No. 19-2496)). Judge Sim Lake

---

[1] This charge has been called various names throughout the litigation. For consistency, the court calls it an "EMS Fee," which is what Riley calls it in her complaint. (Docket Entry No. 1-2 ¶ 1.1 (Exhibit A-1)).

2

granted the motion in part and denied it in part, concluding that Riley had Article III standing to pursue her claims, but lacked standing to pursue injunctive relief for the defendants' future conduct unrelated to her. (Docket Entry No. 37 at 14–15 (Civil Action No. 19-2496)).

Judge Lake questioned whether the court had subject-matter jurisdiction under CAFA or if an exception applied, because the case centered on Texas parties and arose under Texas law. (*Id.* at 13–14). Judge Lake ordered supplemental briefing on the issue. (*Id.* at 14). In response, Riley moved to dismiss, stating that she "believe[d] that at least two-thirds" of her proposed class "must necessarily be citizens of . . . Texas." (Docket Entry No. 40 at 2 (Civil Action No. 19-2496)). Judge Lake dismissed Riley's case, without prejudice. (Docket Entry No. 41 (Civil Action No. 19-2496)).[2]

On that same day, Riley filed this case in the 157th District Court of Harris County, Texas. (Docket Entry No. 1-2 (Exhibit A-1)). This case mirrors her previous one. She alleges that the defendants fail to inform emergency patients of the "EMS Fee" that is added to their hospital bills, in violation of Texas law. Riley seeks class certification and, for relief, a declaratory judgment that the defendants' notice and billing practices are unlawful, injunctive relief, restitution, and attorney's fees. (Docket Entry No. 1-2 at 19–20 (Exhibit A-1)); *see* TEX. R. CIV. P. 42(b)(1), (2); TEX. CIV. PRAC. & REM. CODE § 37.001 *et seq.*; TEX. BUS. & COM. CODE §§ 17.45(5), 17.46(b)(24), 17.50(b)(a)(1), (3), (b)(2), (4), (d).

The defendants timely removed, alleging federal subject-matter jurisdiction under § 502(a) of ERISA and CAFA. Riley moved to remand, and the defendants responded. (Docket Entry

---

[2] A similar series of events occurred in a case that Riley's counsel brought on behalf of "[a]ll individuals who, within the last four years, received treatment at a Texas Health emergency department in Texas, and who were charged an emergency department facility fee designated with a CPT Code of 99281, 99282, 99283, 99284, or 99285." (Docket Entry No. 1 ¶ 5.1; Docket Entry Nos. 18, 21, 22, *Strong v. Tex. Health Res. et al*, No. 4:19-cv-00661-P (N.D. Tex. 2020)).

3

Nos. 1, 10, 21, 22, 23). While that motion was pending, the defendants moved to dismiss, for judgment on the pleadings, and for summary judgment. (Docket Entry Nos. 17, 19, 32).

**II.    Analysis**

A case may be removed to federal court under 28 U.S.C. § 1441(a) when federal subject-matter jurisdiction exists and the removal procedure has been properly followed. The removing party has the burden to show that federal jurisdiction exists. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). Courts strictly construe removal statutes in favor of remand and against removal. *Bosky v. Kroger Tex., LP*, 288 F.3d 208, 211 (5th Cir. 2002).

**A.    ERISA Preemption**

The Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*, is "an ambitious statutory scheme . . . designed to protect the interests of participants in employee benefit plans and their beneficiaries." *Dialysis Newco, Inc. v. Cmty. Health Sys. Grp. Health Plan*, 938 F.3d 246, 248 (5th Cir. 2019) (internal quotation marks and brackets omitted). "ERISA protects the beneficiaries of employee benefit plans by establishing standards of conduct, responsibility, and obligation for fiduciaries . . . and . . . providing for appropriate remedies . . . and ready access to the Federal Courts." *Gomez v. Ericsson, Inc.*, 828 F.3d 367, 370 (5th Cir. 2016) (internal quotation marks omitted). ERISA also benefits employers by ensuring "uniform administrative procedures for their plans without being subject to conflicting and inconsistent [s]tate and local regulations." *Id.* (internal quotation marks omitted); *see Aetna Health, Inc. v. Davila*, 542 U.S. 200, 208 (2004) ("The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans."). The importance of those interests is reflected in ERISA's broad preemption of state law. *Gomez*, 828 F.3d at 370–71; *see Davila*, 542 U.S. at 208 ("ERISA includes expansive

4

pre-emption provisions . . . to ensure that employee benefit plan regulation would be exclusively a federal concern." (internal quotation marks omitted)).

ERISA is a "rare example[]" of a federal statute that "provides federal jurisdiction in an exception to the well-pleaded complaint rule." *Gomez*, 828 F.3d at 370–71. Complete preemption under ERISA "provides grounds to remove a case from state court—despite the fact that the complaint does not affirmatively allege a federal claim—because Congress may so completely preempt a particular area such that any civil complaint raising this select group of claims is necessarily federal in character." *Ford v. Freeman*, 388 F. Supp. 3d 692, 699 (N.D. Tex. 2019) (quoting *Arana v. Ochsner Health Plan*, 338 F.3d 433, 437 (5th Cir. 2003)).

Relevant here, ERISA completely preempts a state-law cause of action that "duplicates, supplements, or supplants" the remedies in § 502(a), ERISA's civil enforcement provision. *Davila*, 542 U.S. at 209. In determining whether a plaintiff's state-law claims are preempted by § 502(a), the court examines whether: (1) the plaintiff could have brought her claim under § 502(a); and (2) there is an independent, non-ERISA legal duty implicated by the conduct alleged. *Ford*, 388 F. Supp. 3d at 699 (citing *Davila*, 542 U.S. at 210, and *Innova Hosp. San Antonio, L.P. v. Humana Ins. Co.*, 25 F. Supp. 3d 951, 957–58 (W.D. Tex. 2014)); *see also Lone Star OB/GYN Assocs. v. Aetna Health Inc.*, 579 F.3d 525, 529–30 (5th Cir. 2009).

### 1. Could Riley Have Asserted Her Claims Under Section 502(a)?

The defendants argue that Riley could have asserted her claims under § 502(a)(1)(B) or § 502(a)(3) of ERISA. The court address each in turn.

#### a. Section 502(a)(1)(B) of ERISA

Section 502(a)(1)(B) allows a civil action "by a participant or beneficiary" to "recover benefits due . . . under the terms of his plan, to enforce his rights under the terms of the plan, or to

5

clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The defendants argue that § 502(a)(1)(B) preempts Riley's claims because the claims "necessarily challenge her health plan's decision to cover the Hospital's [EMS Fee] and assign the negotiated rate for that charge to [her] as part of her deductible." (Docket Entry No. 21 at 11). The defendants argue that "[i]t is these determinations that give rise to [Riley]'s claims—not the Hospital's alleged inclusion of an 'undisclosed' [EMS Fee]." (*Id.*).

The defendants' arguments are unpersuasive. In Riley's first case, Judge Lake determined that the outstanding balance on Riley's ER bill was an injury-in-fact redressable through declaratory and injunctive relief against the defendants. (Docket Entry No. 37 at 12–13 (Civil Action No. 19-2496)). In Riley's first case, the defendants did not dispute that her injury was "fairly traceable to their alleged conduct." (*Id.* at 13).

Riley is not challenging a coverage decision made by her health plan. Her allegations and claims focus on the defendants' policy of adding an allegedly undisclosed fee to emergency patients' hospital bills. Key to her case is the allegation that the defendants impose the hidden fee on all emergency room patients, regardless of their insurance coverage. (Docket Entry No. 10 ¶ 2.4). Riley's claim does not require a "patient-insurance company relationship." *ACS Primary Care Physicians Sw., P.A. v. United Healthcare Ins. Co.*, No. 4:20-CV-1282, 2020 WL 4932152, at *3 (S.D. Tex. Aug. 17, 2020). Her claim would be the same if she did not have health insurance. Her health insurance plan may have mitigated her injury by paying some of the emergency room charges, including part of the challenged EMS Fee, but that does not otherwise implicate the plan. (*See* Docket Entry No. 37 at 10 (Civil Action No. 19-2496) (rejecting the defendants' argument that Riley's outstanding balance is not an injury because her insurer reduced the fee amount)). Riley's claims are based on the defendants' conduct in adding the EMS Fee to a patient's bill.

6

Whether that bill is submitted to an insurer, and whether and how the insurer processes that bill, are irrelevant.

The defendants cite *McHugh v. Trinity Health Sys.*, No. 1:17-CV-1413, 2018 WL 4932500 (N.D. Ohio June 25, 2018), *report and recommendation adopted*, No. 1:17CV1413, 2018 WL 4501054 (N.D. Ohio Sept. 20, 2018), *Hern v. St. Anthony's Med. Ctr.*, No. 4:16-CV-1296 JAR, 2016 WL 6031911, at *3 (E.D. Mo. Oct. 14, 2016), *Williams v. Methodist Healthcare-Memphis Hosps.*, No. 08-02387-JPM-TMP, 2009 WL 10664396, at *4 (W.D. Tenn. Feb. 6, 2009), and *Rutz v. Barnes-Jewish Hosp.*, No. 04-CV-0748-MJR, 2005 WL 8173649, at *4 (S.D. Ill. May 27, 2005). Each is distinguishable.

In *McHugh*, the plaintiffs—a patient and her healthcare plan—sued the plan administrator and the hospital where the plaintiff patient received care. The plaintiffs alleged, among other things, that the defendant hospital wrongfully submitted charges that were not usual, reasonable, or customary, to the plan administrator, which wrongfully paid the hospital using the plaintiff healthcare plan's funds. The court held that ERISA preempted the plaintiffs' claims against the hospital because each claim "invoke[d] determinations directly addressed in [the plaintiff healthcare plan]'s plan documents." 2018 WL 4932500 at *10. Central to that conclusion was the court's recognition that the plaintiffs' claims relied on the terms of the plaintiff patient's ERISA-governed health care plan. *Id.* at *9–10. For example, the plan provided that it would "pay reasonable and customary charges, when medically necessary," and the plaintiffs claimed that the hospital breached its common-law fiduciary duty by charging prices "above usual and customary, above negotiated and above Medicare prices." *Id*. at *10. Riley's claims do not present a similar overlap with the terms of her health care plan. Riley is not seeking to vindicate a health insurer's

7

rights against a claims-administrator or hospital. As discussed above, Riley's claims are independent of the terms and actions of her health insurer.

In the other cases cited by the defendants, the courts held that the plaintiffs' claims were preempted because resolving them required the courts to interpret the plaintiffs' health insurance plans. In *Hern*, the plaintiff alleged that the defendant hospital violated an agreement between the hospital and the patient's insurance plan by placing a lien on the plaintiff's unrelated tort judgment instead of submitting the patient's hospital bill to her insurer. 2016 WL 6031911 at *3. The court held that ERISA preempted the plaintiff's claims because she could "only prevail on her claims if she was entitled to benefits under her health insurance plan," her "coverage ha[d] not yet been determined," and, to determine coverage, the court would have to construe her insurance plan. *Id*.

Similarly, the plaintiff's claim in *Williams* centered on her allegation that the defendant hospital charged her "more than the price it had negotiated with [her] insurer." 2009 WL 10664396 at *1. The court found preemption because determining "[w]hether [the] [p]laintiff [wa]s in fact entitled to reduced fees under her [insurance plan] require[d] the Court to construe the meaning of 'Covered Benefits' under the Plan." *Id*. at *4.

Finally, in *Rutz*, the court held that ERISA preempted the plaintiff's state-law claims against a defendant hospital for fraud and unjust enrichment because they were "based upon the contracts between" the hospital and the health insurance plan. 2005 WL 8173649 at *4. The plaintiff's claim focused on the hospital's treatment of third-party payor rights. That issue was governed by the terms of the contracts between the hospital and the insurance plans and the terms of those plans. *Id*. As in *Hern* and *Williams*, the *Rutz* court concluded that the plaintiff's claims "require[d] a contract interpretation," making ERISA preemption applicable. *Id*. at *5.

8

The defendants' cited cases establish that ERISA preemption applies if the court must interpret or apply the terms of a plaintiff's ERISA-governed health insurance plan to resolve the plaintiff's claims. That principle is inapplicable here. Riley's claims, and the claims of her proposed class members, are independent of the health insurance plan they may have. Riley's claim would be the same even if she lacked a health insurance policy. Riley's state-law claims could not have been brought under § 502(a)(1)(B) of ERISA.

### b. Section 502(a)(3)

Section 501(a)(3) of ERISA allows a civil action "by a participant, beneficiary, or fiduciary" to (a) "enjoin any act or practice which violates any provision of this subchapter or the terms of the plan" or (b) "obtain other equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). The defendants assert that Riley "could have sought equitable relief relating to the determination that (1) her health plan covered the [EMS Fee], and (2) the allowed [EMS Fee] was [Riley]'s responsibility." (Docket Entry No. 21 at 13). The defendants allege that, "[i]f [Riley] believes that she should not be responsible for paying the challenged [EMS Fee]—because it was undisclosed or for any other reason—ERISA provides an avenue for her to assert that claim." (*Id.*).

Riley's claim is not that her plan, rather than her, should be "responsible for paying" the EMS Fee. Her claim is that the Fee was wrongfully imposed by the defendants because "patients are given no advance notification or warning that they will be charged an EMS Fee for their visit." (Docket Entry No. 1-2 ¶ 1.1 (Exhibit A-1)). The declaratory and injunctive relief that Riley seeks for herself and her proposed class focus on the defendants' notice and billing practices. The defendants' characterization of the relief sought relief does not work with Riley's proposed class definition of "[a]ll individuals who, on or after July 10, 2015, received or will receive treatment at

9

an HCA Houston Healthcare hospital, and who were or will in the future be charged an [EMS] Fee designated with" certain "CPT Code[s]." (Docket Entry No. 1-2 ¶ 6.1 (Exhibit A-1)). Riley's request for restitution is not tied to any insurance plan, because the court need not interpret or apply any plan to determine and award amounts paid to the defendants for the EMS Fee. Relief, for the class or Riley, is independent of insurance coverage, ERISA-governed or otherwise. Riley's state-law claims could not have been brought under § 502(a)(3) of ERISA.

### 2. An Independent Legal Duty

"A legal duty is not independent of ERISA if it 'derives entirely from the particular rights and obligations established by [ERISA] benefit plans.'" *Ford*, 388 F. Supp. 3d at 700 (quoting *Davila*, 542 U.S. at 213) (brackets in *Ford*). "In other words, state law legal duties are not independent of ERISA where interpretation of the terms of the benefit plan forms an essential part of the claim, and legal liability can exist only because of the defendant's administration of ERISA-regulated benefit plans." *Id.* (internal quotation marks and brackets omitted).

Riley's state-law claims turn on whether Texas law requires the defendants to disclose their EMS Fee to emergency room patients. Resolving whether a duty to disclose the Fee exists under Texas law, and, if so, whether the defendants violated it, does not require the court to interpret an insurance plan or evaluate the defendants' administration of an ERISA-regulated plan. The state law Riley cites does not "govern[] a central matter of plan administration or interfere[] with nationally uniform plan administration." *Rutledge v. Pharm. Care Mgmt. Ass'n*, No. 18-540 at 5, 592 U.S. at ___ (Dec. 10, 2020) (slip op.). The central issues of this case are the same whether or not Riley has an ERISA-governed health insurance plan, or any health insurance at all. The legal duties Riley alleges are independent of ERISA. *See Id.* at 6–7 (ERISA did not preempt a state

statute because the statute applied to pharmacy benefit managers "whether or not they manage an ERISA plan.").

ERISA does not preempt Riley's state-law claims. *See Rutz*, 2005 WL 8173649 at *4 (a defendant cannot "recharacterize a plaintiff's well-pleaded state law claims as arising under ERISA, if resolution of those claims requires no construction of the ERISA plan or its terms.").

### B. The Class Action Fairness Act

The Class Action Fairness Act "extends federal jurisdiction to certain large class action lawsuits." *Arbuckle Mountain Ranch of Texas, Inc. v. Chesapeake Energy Corp.*, 810 F.3d 335, 337 (5th Cir. 2016). Under CAFA, a federal court has jurisdiction if "the proposed class is at least 100 members, minimal diversity exists between the parties, the amount in controversy is greater than $5,000,000, and the primary defendants are not states, state officials, or other government entities." *Id.* (citing 28 U.S.C. § 1332(d)(2), (5)). The record shows, and the parties do not dispute, that those requirements are met.

Riley argues that an exception to CAFA applies. CAFA contains several exceptions, including three that apply if "the forum has significant connections to the parties or the conduct at issue." Robert H. Klonoff & Mark Herrmann, *The Class Action Fairness Act: An Ill-Conceived Approach to Class Settlements*, 80 TUL. L. REV. 1695, 1715 n.101 (2006); *see also Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 166 n.1 (2014) ("CAFA provides certain exceptions for class actions that involve matters of principally local or state concern."). Under § 1332(d)(4)(B), the "home state exception," the court "'shall decline to exercise jurisdiction' when 'two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.'" *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 804, 811 (5th Cir. 2007) (quoting 28 U.S.C.

11

§ 1332(d)(4)(B)). That "mandatory abstention provision[] [is] designed to draw a delicate balance between making a federal forum available to genuinely national litigation and allowing the state courts to retain cases when the controversy is strongly linked to that state." *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 570 (5th Cir. 2011) (internal quotation marks omitted).

For the home-state exception to apply, Riley must show, "with reasonable certainty," that the defendants and at least two-thirds of her proposed class members are Texas citizens. *Arbuckle Mountain Ranch*, 810 F.3d at 338. The court must "make an objective factual finding regarding the percentage of class members that were citizens of [Texas] at the time of filing the class petition." *Preston*, 485 F.3d at 811. "Jurisdictional determinations should be made largely on the basis of readily available information." *Hollinger*, 654 F.3d at 570. "The court has wide, but not unfettered, discretion to determine what evidence to use in making its determination of jurisdiction." *Id.* at 570–71.

The court is aware of two other pending cases, involving similar facts and claims, that raise the issue of whether an exception to CAFA jurisdiction applies based on the citizenship of the plaintiff's proposed class. (*See* Docket Entry Nos. 58, 59, 60, 63, *Mock v. St. David's Healthcare Partnership, L.P., LLP*, No. 1:19-cv-00611-RP (W.D. Tex. 2019); Docket Entry Nos. 44, 47, 48, 52, *De Leon v. North Tex. Div. Inc. et al*, No. 3:19-cv-01574-X (N.D. Tex. 2019)). At this time, neither court has ruled on the issue.

Based on the pleadings, the motion, and the arguments of counsel, the court concludes that Riley has met her burden. Judge Lake previously expressed concern that an exception under § 1332(d)(4) applied. (Docket Entry No. 37 at 14 (Civil Action No. 19-2496)). The defendants do not dispute that they are Texas citizens. (Docket Entry No. 1 at 14). It is reasonably certain

12

that more than two-thirds of Riley's proposed class are also citizens of Texas. Riley proposes the following class definition:

> All individuals who, on or after July 10, 2015, received or will receive treatment at an HCA Houston Healthcare hospital, and who were or will in the future be charged an Evaluation and Management Services Fee designated with a CPT Code of 99281, 99282, 99283, 99284 or 99285 for such hospital visit.
>
> Excluded from the Class and an[y] subclass are any officers or directors of Defendants, together with the legal representatives, heirs, successors or assigns of Defendants and any judicial officer assigned to this matter and his or her immediate family.

(Docket Entry No. 1-2 ¶ 6.1 (Exhibit A-1)). According to Riley, that class "consists of at least tens of thousands of persons." (*Id.* ¶ 6.3). The defendants do not challenge that estimate or the citizenship of the proposed class members. "The evidentiary standard for establishing citizenship and domicile at this preliminary stage must be practical and reasonable." *Hollinger*, 654 F.3d at 572. It is reasonably certain that a large majority of individuals visiting hospital emergency departments in Texas are Texas citizens, meaning that at least two-thirds of Riley's proposed class are Texas citizens. Section 1332(d)(4)(B) applies. The court lacks subject-matter jurisdiction.

### III.   Conclusion

Riley's motion for remand, (Docket Entry No. 10), is granted. Remand is entered by separate order. Any outstanding motions are denied as moot.

SIGNED on December 10, 2020, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge